State, *ex rel.* Beaver, *v.* Bottorff.

---

### No. 9436.

### STATE, EX REL. BEAVER, *v.* BOTTORFF.

BASTARDY.—*Evidence.*—Where, in a prosecution for bastardy, the relatrix introduces evidence tending to prove efforts on the part of the defendant, after knowledge of her pregnancy, to induce the marriage of the relatrix to another man, the defendant may prove that he, in fact, discouraged such marriage.

NEW TRIAL.—*Surprise.*—A motion for a new trial, based upon affidavits showing surprise by the adversary's evidence, and a belief that upon another trial proof can be procured to overthrow such evidence, should not be granted, unless it appear that such countervailing proof could not have been obtained at the time or by a short delay of the trial, and that delay for that purpose had been requested.

From the Warren Circuit Court.

*J. McCabe* and *C. M. McCabe,* for appellant.

*J. M. Rabb* and *M. Milford,* for appellee.

MORRIS, C.—This was a prosecution for bastardy, based upon the affidavit of the relatrix, Lucretia E. Beaver. In the circuit court, the cause was submitted to a jury, who returned a verdict for the appellee, upon which the court, over a motion for a new trial made by the relatrix, rendered judgment in his favor.

The relatrix appeals to this court, and assigns as error the overruling of her motion for a new trial.

Upon the trial of the cause in the circuit court, the relatrix testified that she had been delivered of a bastard child; that she was, at the time it was begotten, unmarried, and that the appellee was the father of the child, that she had been living with the appellee about a year; that the child was begotten about the 5th of December, 1879, and that it was born on the 13th of August, 1880; that the appellee came to her room on the 5th of December, 1879, in the night, and said he would have what he wanted or her life; that his wife was not at home; that there were two young men in the house, Waldress and William Bottorff. She further testified as follows: "I was awakened in the night; I asked who was there; Jacob Bottorff said, 'Me. You might as well give up to me, for I am bound to have it or your life.' I said, 'for God's sake go away.' I spoke very loud; I screamed it; he got in bed with me and I gave up to him." She further testified that Bottorff and his wife found out that she was in a family way in about a month; that Bottorff told her that Charles Beaver was a nice young man; that Beaver came to see her for the first time, January 18th, 1880, and that she married him February 19th, 1880; that the first time Beaver came to see her, the appellee and his wife asked her if he had said anything about marrying; that she answered "no;" that they then told her, that, if he said nothing about it the next time, she must; that Beaver came to see her three times. She then testified further as follows: "Mr. Bottorff never told me that Charles Beaver was of no account, nor that he had a bastard child by another girl; I never had such a conversation with him, but he always urged me to marry him."

Charles Beaver, the husband of the relatrix, testified that the appellee invited him to come and see the relatrix; told him that she was a good girl; that he was living a dog's life while single; that he need not come to see the girl more than twice, as they knew each other to be all right; that he was ignorant of the relatrix's condition at the time he married

her; that he has continued to live with her and never mentioned the matter to the appellee.

The appellee testified, over the objection of the appellant, as follows: "I had a conversation with the relatrix, Lucretia Beaver, in my house, in the presence of Harriet Courtney, my mother, about the said Lucretia getting married; I told her she had better get better acquainted with Beaver before she married him; that I did not think him of much account; that I had heard that Beaver had had a child by another girl; I said to her that she was her own boss, and could do as she pleased; she said 'yes,' and that she intended to marry him."

The admission of this testimony on the part of the appellee is one of the grounds urged for a new trial.

The appellant's counsel insist, with much apparent earnestness and confidence, that the court erred in the admission of this testimony. They say that it is not competent as an admission, because the relatrix was not a party to the suit; that, as impeaching testimony it was incompetent, because the proper foundation had not been laid for its introduction, and because it related to matter altogether collateral to the issues in the case. It is not probable that the testimony was offered or admitted merely as an admission of the relatrix, nor for the purpose of impeaching her as a witness on the ground that she had made statements inconsistent with her testimony.

The relatrix had testified that the appellee knew her condition soon after the child had been begotten, and that, with such knowledge, he urged her to marry Beaver. She testified to several facts and circumstances tending to show great anxiety on the appellee's part to get her married off as soon as possible. The husband testified that the appellee had invited him to see the relatrix, told him that she was good, and that two visits would be enough. All this testimony was relevant and proper. It tended strongly to corroborate the main facts testified to by the relatrix, and to give probability to her testimony generally. If the appellee was the father of the child,

he would, probably, have been anxious to secure the marriage of the mother as soon as possible, with the hope of imposing the spurious child upon the husband as his own, prematurely born, but begotten in due time. If it was competent for the prosecution to prove that the appellee anxiously encouraged the speedy marriage of the relatrix, for the purpose of giving probability to the charge, it was equally competent for the appellee to prove that he had not urged, but discouraged, her marriage. If, as he swears, he told the relatrix not to marry Beaver until she knew more about him, that he did not think Beaver of much account, and that he had heard that he had a child by another girl, such statements were competent to go to the jury as original evidence, tending to disprove facts sought to be established by the prosecution. Statements, thus made to the relatrix, were facts competent to go to the jury, not as admissions made by either party, nor as impeaching testimony, but as original evidence tending to meet and overcome important and pertinent testimony put in by the prosecution. The statements testified to by the appellee were verbal acts, material to the question before the jury, and therefore competent. The court did not err in the admission of this testimony.

On the trial of the cause, a Dr. Osburn, a witness produced by the appellee, testified that at the time the child is alleged to have been begotten, the appellee was suffering from a concussion of the spine, from atrophy of the testicles, and from general debility; that he had, shortly before, used phosphorous and other medicines upon him, with a view to excite his genital organs, but had failed.

It is claimed that this testimony took the appellant by surprise; that Dr. Osburn had, testified fully upon a former trial of the cause, and had not, in his former testimony, mentioned, or even alluded to, the ailments above stated. Affidavits of the relatrix, her husband, her counsel, and one Dr. Beason were filed with the motion for a new trial. These affidavits stated that Osburn had testified on a former trial of the cause,

but had not mentioned or alluded in his former testimony to the fact that the appellee was suffering from an affection of the spine, or from atrophy of the testicles, nor that he had administered phosphorus or other medicines to him for the purpose of exciting his genital organs. The affidavits of the relatrix and her counsel stated that they were taken by surprise by the Doctor's testimony, and that if a new trial should be granted, they believed they could show by a personal examination of the appellee, that the Doctor's testimony was false.

There was no reason shown why a medical examination of the appellee could not have been made at the time of the trial, and the result put in evidence in rebuttal. The appellant examined several witnesses, Dr. Beason among them, in rebuttal, and after Dr. Osburn had testified. The appellee, as well as medical witnesses, seems to have been present at the trial, and would, for aught that appears, have been willing to submit to any proper personal examination. The appellant had, after hearing Osburn's testimony, sufficient opportunity to meet it. If the appellant, after hearing his testimony, chose to submit the case upon the testimony before the jury, without an attempt to refute or answer the testimony of Dr. Osburn, it is now too late to complain. Had the appellant, if taken by surprise, asked the court to delay the trial, if time was necessary to procure evidence to meet that which is claimed to have taken the relatrix by surprise, such delay would, doubtless, have been granted. Nothing of the kind was attempted. It does not appear that any delay was desired. From the whole record, we think it may be fairly inferred that the appellant might have been as well prepared to meet Dr. Osburn's testimony on the trial, as at a subsequent time. There was no error in overruling the motion for a new trial.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be affirmed, at the costs of the appellant.